IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| DANIEL SHAW and KIMBERLY SHAW, | ) ) |
| | ) |
| Plaintiffs, | ) |
| | ) CIVIL ACTION |
| v. | ) FILE NO. 1:18-CV-02708 |
| | ) |
| DAVID S. BOAZ, M.D. SOUTH FORSYTH FAMILY MEDICINE AND PEDIATRICS, LLC, ALI MORTAZAVI, D.O. and RESURGENS, P.C. | ) ) ) ) ) |
| | ) |
| Defendants. | ) |

**DEFENDANTS DAVID S. BOAZ, M.D. AND SOUTH
FORSYTH FAMILY MEDICINE AND PEDIATRICS
LLC'S OMNIBUS MOTIONS *IN LIMINE* AND SUPPORTING BRIEF**

COME NOW Defendants David Boaz, M.D. ("Dr. Boaz") and South

Forsyth Family Medicine and Pediatrics, LLC ("SFFMP") (collectively

"Defendants") and hereby move *in limine* to exclude the following

categories of evidence from the trial of this case:

1. Any evidence or argument alluding to professional liability
   insurance policies held by the Defendants or any of their expert
   witnesses;

2. Any evidence or argument alluding to any party's financial
   status, including the Plaintiffs' inability to pay medical bills;

3. Any criticisms of the Defendant healthcare providers offered by lay witnesses;

4. Expert testimony from any witness not qualified to testify against the Defendant healthcare provider or not previously identified as an expert during discovery;

5. Hearsay, including any alleged comments or criticisms of any Defendants made by any healthcare provider to the Plaintiffs;

6. Criticisms of the Defendants not causally related to claimed injuries or damages;

7. Evidence of lawsuits or claims filed against the Defendants or any of their expert witnesses;

8. Hearsay opinions and conclusions contained in medical records from non-witness medical providers;

9. Repetitive or duplicative testimony regarding Mr. Shaw's injuries;

10. Evidence or argument invoking the Golden Rule;

11. Any argument that the jury should "send a message" with its verdict;

12. Any reference or testimony by any physician, including retained experts, regarding tort reform;

13. The introduction of documents or witnesses not identified in the Pre-Trial Order;

14. Any expert opinions not previously disclosed during discovery;

15. Evidence or argument regarding the failure to undertake negotiations to compromise the Plaintiffs' claims;

16. Evidence or argument regarding the standard of care that encompasses hindsight;

17. To use technology and preview certain records during opening statement;

18. Evidence or argument that references Plaintiffs' general good character or seeks Defense witnesses to vouch for Plaintiffs' witnesses;

19. Evidence or argument regarding the emotional toll or damage the Plaintiffs' injuries caused family members other than Mr. and Mrs. Shaw;

20. References to medical literature without the proper foundation;

21. Asking questions regarding or otherwise referring to generalized safety standards or other aspirations of safety in the community that have no relevance to the standard of care set forth by Georgia law, including during *voir dire*, during the questioning of both fact and expert witnesses and during opening and closing statements; and

22. Presenting, discussing, arguing or otherwise exhibiting any testimony or evidence constituting statements of regret, apology, sympathy, mistake, or error allegedly made by any health care provider.

For the more specific reasons discussed below, all of these categories of evidence should be excluded because they are irrelevant to the narrow issues properly before the jury in this case.

1. **Evidence or argument alluding to professional liability insurance policies held by the Defendants or any of their expert witnesses.**

This Court should exclude all references to any liability insurance held by the Defendants. Insurance is irrelevant to the issues in this case and would be highly prejudicial. <u>See</u> Fed. R. Evid. 411 ("evidence that a person was or was not insured against liability is not admissible upon the issue of whether the person acted negligently or otherwise wrongfully"); Fed. R. Evid. 403; <u>see</u> <u>also</u> <u>City Council of Augusta v. Lee</u>, 153 Ga. App. 94, 98, 264 S.E.2d 683, 687 (1980). The Georgia appellate courts repeatedly have declared that "not only is a liability insurance policy of a litigant not admissible in evidence, but disclosure to the jury of the mere existence of such [a] contract is grounds for mistrial." <u>Moore v. Price</u>, 158 Ga. App. 566, 567, 281 S.E.2d 269, 271 (1981) (<u>citing</u> <u>Patillo v. Thompson</u>, 106 Ga. App. 808, 809(1), 128 S.E.2d 656 (1962)); <u>see</u> <u>also</u> <u>Denton v. Con-Way Southern Express, Inc.</u>, 261 Ga. 41, 42, 402 S.E.2d 269, 270 (1991) (internal punctuation altered and citations omitted) (recognizing that the introduction of insurance can be grounds for mistrial because the evidence is "highly prejudicial and can influence the entire case"), <u>overruled on other grounds by</u> <u>Grisson v. Gleason</u>, 262 Ga. 374, 418 S.E.2d 27 (1992). Although there

are exceptions to the rule articulated in Fed. Rule Evid. 411, none apply in this case. The Defendants also agree this exclusion does not apply to *voir dire*.

In light of the irreversible prejudice the Defendants would suffer should the jury learn of their liability insurance, the Plaintiffs should not be allowed to do indirectly what they cannot accomplish directly. See Fed. R. Evid. 401; Fed. R. Evid. 403; Fed. R. Evid. 411.   Thus, for example, Plaintiffs' counsel should not be allowed to question defense experts about their medical malpractice insurance in an attempt to illustrate bias.   Any minimal probative or impeachment value that might be found in this evidence would be heavily outweighed by its prejudicial impact.   See e.g., Denton, 261 Ga. at 42; Moore, 158 Ga. App. at 567.   All evidence and testimony regarding insurance coverage should therefore be excluded from the trial of this case.

### 2.  Any evidence or argument alluding to any party's financial status, including the Plaintiffs' inability to pay medical bills.

The Plaintiffs' financial status, as well as any financial hardship they may have experienced due to Mr. Shaw's injuries, is inadmissible. Fed. R. Evid. 401; Fed. R. Evid. 403.  The Georgia Supreme Court succinctly has explained why evidence of the parties' financial status is not a proper matter

for the jury to entertain:  "[O]ur courts have consistently held that neither the wealth of the plaintiff nor the defendant is relevant.  [A] man's treatment before the bar of justice should not vary with his financial condition." Denton v. Con-Way Southern Express, Inc., 261 Ga. 41, 42, 402 S.E.2d 269, 270 (1991) (internal punctuation altered and citations omitted), overruled on other grounds by Grisson v. Gleason, 262 Ga. 374, 418 S.E.2d 27 (1992).

The Plaintiffs may attempt to introduce evidence or otherwise argue that they are unable to pay for medical bills Mr. Shaw incurred.  Any such evidence or argument plainly is improper and should be excluded.  While the amount of past medical bills may be received in evidence under certain circumstances, the Plaintiffs' ability to pay those bills is irrelevant.  Warren v. Ballard, 266 Ga. 408, 410, 467 S.E.2d 891, 893 (1996) (holding that there can be no recovery for anxiety or worry over a person's ability to pay medical bills and, therefore, testimony about that subject does not relate to any material issue).  See also Worthy v. Kendall, 222 Ga. App. 324, 325, 474 S.E. 2d 627, 629 (1996) (holding that the financial resources of the [plaintiffs] are irrelevant to the issue of damages).

Moreover, any argument or suggestion that Plaintiffs are unable to pay for Mr. Shaw's medical bills necessarily implies that the Defendants are in a

better financial position, and could or should bear the responsibility or burden of paying those bills.  If the Plaintiffs are permitted to pursue this argument, Defendants' financial positions would be improperly injected into this case.  For these reasons, this Court should disallow any argument or evidence about the Plaintiffs' inability to pay for Mr. Shaw's medical care.

### 3. Any criticisms of the Defendant healthcare providers offered by lay witnesses.

The Federal Rules of Evidence have strict rules regarding opinion testimony by lay persons and by experts. See Fed. Rules Evid. 701, 702. Under the Federal Rules, experts may only provide testimony if they are qualified under Fed. Rules Evid. 702 and the Daubert and Kumho Tire Co. caselaw interpreting that rule. Additionally, Georgia state courts consistently have held in the medical malpractice context that only expert witnesses are permitted to testify regarding whether a physician has complied with or deviated from the standard of care.  See Morrison v. Koornick, 201 Ga. App. 367, 370, 411 S.E.2d 105, 108-09 (1991) ("The care and skill applicable in performing medical services are not matters within the common knowledge of . . . lay persons.  These standards are within the special knowledge of experts in the field of medicine and are to be proven only by the testimony of expert medical witnesses."); McCormick v. Avret, 154 Ga. App. 178, 179,

267 S.E.2d 759, 760 (1980) ("Ordinarily, only a medical doctor has the training and experience necessary to provide meaningful testimony on the question of due care in a medical malpractice case.").

Lay witnesses should be precluded from offering opinions regarding the propriety of the medical care provided to Mr. Shaw or the cause of Mr. Shaw's disability. Out of an abundance of caution, the Defendants ask for a ruling preventing lay witnesses such as Mr. Shaw, Mrs. Shaw, Mrs. Heckman (Mrs. Shaw's mother), or any of the Shaw's friends and family members from giving a medical opinion as to what medical care should have been provided to Mr. Shaw.

One particular witness who offered a lay opinion is Plaintiff Kimberly Shaw. Understandably, Mrs. Shaw is very upset by the disability of her husband. During her deposition, she expressed opinions that Mr. Shaw did not receive the appropriate care from Dr. Mortazavi because Dr. Mortazavi came across as dismissive. [Dep. of K. Shaw, p. 51-52.] Other than this testimony, which her attorney objected to, Ms. Shaw did not offer any other lay criticisms.

Defendants, out of an ambulance of caution, ask that the Plaintiffs and their witness be instructed about lay criticisms prior to offering testimony at trial.

### 4. Expert testimony from any witness not qualified to testify against the Defendant healthcare provider or not previously identified as an expert during discovery.

Under Georgia law, a claim for professional negligence must be supported by testimony of an expert.  Whether a witness is qualified to testify as an expert is governed by Fed. Rule Evid. 702.  For an expert witness to be competent to testify under this Rule, the expert must meet the requirements of Rule 702 and satisfy the factors outlined in <u>Daubert</u> and <u>Kumho</u>. <u>See</u> <u>Daubert v. Merrell Dow Pharmaceuticals, Inc</u>., 509 U.S. 579 (1993); <u>Kumho Tire Co. v. Carmichael</u>, 119 S.Ct. 1167 (1999). The Plaintiffs should be excluded from attempting to elicit standard of care or causation testimony from any witness who is not properly qualified under Fed. Rule Evid. 702

For example, Plaintiffs' treating neurologist, Alan Maloon, M.D. testified in this case. He agreed that he has no standard of care opinions and did not review the records to provide any such opinions as an expert witness. [Deposition of Alan Maloon, M.D., pp. 29:13-31:2.] At trial, to the extent he

- 9 -

is asked to give standard of care opinions, Dr. Maloon must be barred from commenting on what the standard of care would be for Dr. Boaz because he has never practiced as a family medicine physician and does not have the actual professional knowledge and experience in the area of practice or specialty in which the opinion is to be given. As such, any standard of care opinions he might have would not be the type of specialized knowledge that would help the jury in this case.

Likewise, physicians who have not been deposed or identified as expert witnesses may not offer standard of care or causation testimony. Physicians who have not been deposed or identified as true expert witnesses may not offer standard of care or causation testimony. The Federal Rule of Civil Procedure govern the identification of witnesses. Fed. R. Civ. P. 26(a)(2). A party "must supplement or correct its disclosure or response in a timely manner…" Fed. R. Civ. P. 26(e)(1). Plaintiffs should not be allowed to introduce expert testimony from any witness not identified during discovery.

### 5. Hearsay, including any alleged comments or criticisms of any Defendant made by any healthcare provider to the Plaintiffs.

Federal law is clear: hearsay is not generally admissible. See Fed. Rule Evid. 802. Hearsay is evidence that does not derive its value from the

witness offering the testimony, but rather, it rests mainly on the veracity and competency of other persons.  Hearsay is inadmissible and without probative value unless it comes within a recognized exception to the hearsay rule.

Here, the Plaintiffs may attempt to offer hearsay testimony regarding comments allegedly made to them by other healthcare providers who provided medical care to Mr. Shaw including from treating physicians who have not been deposed.  Such testimony could include comments regarding the nature or cause of Mr. Shaw's injuries and the quality of care provided to Mr. Shaw by the Defendants and other healthcare providers, or other similar topics.

The Shaws specifically denied that any healthcare providers made critical comments to them, but testified that they perceived "non-verbal" criticisms from two treating physicians at Wellstar Hospital, Drs. Benedict and Khaldi. [Deposition of D. Shaw, p.p. 88-90 (describing a look of concern from Dr. Benedict and Dr. Caudy [sic] when Mr. Shaw reached the hospital and "was explaining my story and how I got there and who I saw, there was a look of concern about the treatment and why things took so long to get me to that point"; Deposition of K. Shaw, pp. 40-41 (describing a "set of glances between the two doctors that made her take a step back").] This

type of testimony is precisely the kind of "communication" that should be excluded from the trial. Non-verbal communications are included under the definition of "statement" in the Federal Rules of Evidence. See Fed. Rules Evid. Rule 801(a). These non-verbal communications are out of court statements not made by party-opponents. The providers who allegedly made these expressions have not testified under oath and have not been subject to cross-examination. Additionally, these non-verbal communications do not fall into any of the non-hearsay categories, such as motive, notice, or to explain conduct.

In addition to the fact that these alleged non-verbal communications are hearsay, they are also not relevant to the determination of liability, causation, or damages in this case. The main relevance problem with these communications is that we do not know what, if anything, these providers were attempting to communicate. While the Shaws contend the non-verbal cues were criticisms of the providers, that is speculation on their part. It is plausible that the physicians' facial expressions were evidence of surprise that the Shaws did not seek additional medical care for more than seven days during which Mr. Shaw's condition progressively worsened. The problem with these statements is that we do not know what, if anything, the providers

were attempting to communicate and as such, these communications have no relevance, are potentially inflammatory and more prejudicial than probative, and should be excluded under Fed. Rule Evid. 403.

The Defendants request an order limiting any possible exploration at trial into hearsay statements from witness that do not fall into exceptions to the hearsay rule and specifically seek an order preventing the Shaws from discussing these alleged non-verbal criticisms.

### 6. Criticisms of the Defendants not causally related to claimed injuries or damages.

The Plaintiffs' experts may attempt to testify concerning alleged standard of care violations by the Defendants that cannot support the Plaintiff's claims for medical malpractice. In Georgia, a plaintiff's medical malpractice claim must be supported by expert testimony. See Austin v. Kaufman, 203 Ga. App. 704, 705, 417 S.E.2d 660, 662 (1992) ("[T]he general rule is that medical testimony must be introduced to inform the jurors what is a proper method of treating the particular case."). Expert testimony is required to support any alleged standard of care violation. Importantly, expert testimony is required to support any causal link between the alleged standard of care violations and the claimed injuries suffered by the plaintiff. See, e.g., Zwiren v. Thompson, 276 Ga. 498, 500, 578 S.E.2d

862, 864-865 (2003) ("In order to establish proximate cause by a preponderance of the evidence in a medical malpractice action, the plaintiff must use expert testimony because the question of whether the alleged professional negligence caused the plaintiff's injury is generally one for specialized expert knowledge beyond the ken of the average layperson.") Under these standards, any criticisms that are not causally related to the alleged injuries to the Plaintiff must be excluded.

Specific examples of this possible testimony that are addressed elsewhere in these motions are the allegations of medical mistakes by layperson witnesses. The Defendants merely want to bring this issue to the Court's attention and will provide contemporaneous objections to such testimony if offered at trial.

**7. Evidence of lawsuits or claims filed against the Defendants or any of their expert witnesses.**

The Court should disallow evidence of other lawsuits or claims for malpractice filed against the Defendants or the physician expert witnesses. Such evidence would be irrelevant and prejudicial and would distract the jury from the issues in this case.  See Fed. R. Evid. 401- 403

Pursuant to Federal Rule of Evidence Rule 402, "All **relevant** evidence is admissible. . . .  Irrelevant evidence is not admissible."  See Fed.

- 14 -

Rule Evid. Rule 402. Federal Rule of Evidence 403 further states that "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403

The facts relevant to this case are those pertaining to the Defendants' care and treatment of Mr. Shaw, and not treatment provided to other patients. The Plaintiffs should be required to try their case based upon relevant facts and should not be permitted to make a general assault on the character and medical abilities of the Defendants.  Such evidence could distract the jury, prejudice them against the Defendants, and force the Defendants to defend their care of other patients, thereby unnecessarily expanding the scope of the trial.  For these reasons, other lawsuits against the Defendants are not admissible.  Carlisle v. Abend, 288 Ga. App. 150, 151-52, 653 S.E.2d 388, 390-91 (2007) (internal citations omitted) (excluding testimony from expert regarding prior lawsuit of the defendant physician); Williams v. Naidu, 168 Ga. App. 539, 540, 309 S.E.2d 686, 687 (1983) (evidence of prior similar acts of negligence, including lawsuits regarding those acts, must be excluded).

Similarly, other lawsuits, claims, or patient complaints against the Defendants' experts should be excluded.  The fact that one or more experts have been named as defendants in other medical malpractice cases has no bearing on their role in this case, their qualifications, or any other proper matter of inquiry.  Evidence of prior lawsuits filed against defense experts merely would serve to prejudice the jury's consideration of their testimony. As this evidence would be highly prejudicial and would serve no legitimate probative purpose, it should be barred. Fed. R. Evid. 403; see also, e.g., Johnson v. Wills Memorial Hospital & Nursing Home, 178 Ga. App. 459, 461, 343 S.E.2d 700, 702 (1986) (trial court's exclusion of evidence of expert witnesses' previous lawsuits for malpractice was proper).

### 8. Hearsay opinions and conclusions contained in medical records from non-witness medical providers.

These Defendants anticipate that the Plaintiffs may attempt to introduce various medical opinions and conclusions contained in the medical records from non-witness medical providers. Any such opinions should be excluded absent the testimony of the medical provider who formulated the specific opinion or conclusion, or appropriate evidence of the author's qualification under Federal Rule of Evidence 702.  See Fed. Rule Evid. 803(6).  In other words, if the provider is not shown to be qualified under

Rule 702, the medical opinions and conclusions in the records are hearsay.

### 9. Repetitive or duplicative testimony regarding Mr. Shaw's injuries.

The Defendants want to highlight for the Court the possibility for duplicative damages testimony. The Defendants, therefore, ask that the Court use its discretion and control over the presentation of evidence to streamline testimony and exclude duplicative and cumulative evidence under Federal Rule of Evidence 403. See Fed. Rule Evid. 403. This Rule provides that Even if the evidence is relevant, the court may exclude it if its probative value is substantially outweighed by a danger of "unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Id., see also, Aycock v. R.J. Reynolds Tobacco Co., 769 F.3d 1063, 1068 (11th Cir. 2014). For exclusion, the evidence must have "an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one" and the undue prejudice must substantially outweigh the probative value. Id at 1069.

The Defendants anticipate that the Plaintiffs may attempt to elicit repetitive testimony from multiple witnesses regarding Mr. Shaw's injuries and damages. In doing so, the Plaintiffs may seek to introduce duplicative, emotional testimony to create unfair jury sympathy for the Shaw family. The

law prohibits juries from deciding cases based on sympathy for or against a particular party; instead, juries must reach a verdict based on the facts admitted into evidence and the law as determined by this Court. <u>See</u> United Stated Court of Appeals for the Eleventh Circuit, Civil Pattern Jury Instructions (January 2019), Instruction 3.2.2. Other courts have excluded relevant information when it has the potential to improperly invoke sympathy for a party. <u>See</u> <u>Thompson v. State Farm Fire & Cas. Co.</u>, 34 F.3d 932, 940 (10th Cir. 1994). The Defendants ask the Court exercise its judgment to properly limit the scope of evidence concerning injury and damages so as to not improperly prejudice the Defendants.

### 10. Evidence or argument invoking the Golden Rule.

The Defendants anticipate that the Plaintiffs may encourage jurors to place themselves in the Plaintiffs' position and thereby suggest that the jurors consider the outcome they would want if they were faced with a similar situation.  Any such argument is improper because it "asks the jurors to place themselves in the victim's position, asks the jurors to imagine the victim's pain and terror or imagine how they would feel if the victim were a relative". <u>Grossman v. McDonough</u>, 466 F.3d 1325, 1348 (11th Cir. 2006).

This type of argument is clearly error. For these reasons, any argument that implicates the Golden Rule should be prohibited.

**11. Any argument that the jury should "send a message" with its verdict.**

The Plaintiffs may ask the jury to send a message with its verdict. Counsel is not permitted to argue that the jury should punish the Defendants or send a message with its verdict when the issue of punitive damages is not before the jury.  Gielow v. Strickland, 185 Ga. App. 85, 86, 363 S.E.2d 268, 279-80 (1987); Central of Ga. R.R. Co. v. Swindle, 260 Ga. 685, 687, 398 S.E.2d 365, 367 (1990).  Likewise, Plaintiffs' counsel should not ask the jury to be the "conscience of the community" or have their verdict communicate some change in medical practice.  U.S. v. Koon, 34 F.3d 1416, 1443 (9th Cir. 1994), judgment aff'd in part, rev'd in part on other grounds. Such arguments are not based on the evidence, but are appeals to emotions beyond the evidence at trial.  The Plaintiffs also may seek to have the jury punish the Defendants for their conduct at trial or positions taken, which would be inappropriate in this case.  When punitive damages are not before the jury, as they are not in this case, any such argument constitutes reversible error.  Id.  For these reasons, this Court should rule that Plaintiffs' counsel will not be permitted to make any such argument.

**12. Any reference or testimony by any physician, including retained experts, regarding tort reform.**

The Court should rule *in limine* that counsel may not inquire of the Defendants or their expert witnesses whether they have been involved in the tort reform movement or whether those witnesses believe in or support such legislative efforts.  Any evidence regarding these, or any other physician witnesses' role in seeking legislative modification of tort law pertaining to medical malpractice lawsuits, must be excluded.  Any arguable relationship between such evidence and the witnesses' credibility in this case would be extremely tangential at best.   Fed. R. Evid. 401; Fed. R. Evid. 403.  Moreover, the introduction of evidence relating to general "tort reform" is likely to distract the jury, causing them to consider this case in a broader context of the message they may be sending to the community.  None of the Defense witnesses in this case testified that they have a strong feeling about tort reform and any such questioning about tort reform would not reveal any possible source of bias. This case should be tried on its own merits, and testimony regarding the state of medical malpractice law in general should be excluded.

**13. The introduction of documents or witnesses not identified in the Pre-Trial Order.**

The Local Rules for the Northern District of Georgia clearly indicate that documents and witnesses who will or may be present at trial must be listed in the Pre-Trial Order. See L.R. 16.4(B). The reason for this disclosure requirement is to eliminate surprise and to allow the parties to investigate any additional witnesses and documents so that they can effectively address them at trial, thereby preventing any unfair advantage by one party over the other. This Court should not allow the Plaintiffs to avoid the disclosure requirements inherent in the pre-trial order. The Plaintiffs, therefore, should not be permitted to call any witness or introduce any document not identified in their portion of the pre-trial order.

**14. Any expert opinions not previously disclosed during discovery.**

Physicians who have not been deposed or identified as true expert witnesses may not offer standard of care or causation testimony. The Federal Rule of Civil Procedure govern the identification of witnesses. Fed. R. Civ. P. 26(a)(2). A party "must supplement or correct its disclosure or response in a timely manner…" Fed. R. Civ. P. 26(e)(1). Plaintiffs should not be allowed to introduce expert testimony or new opinions not previously identified

during discovery.

**15. Evidence or argument regarding the failure to undertake negotiations to compromise the Plaintiffs' claims.**

The Plaintiffs must be prohibited from introducing evidence or otherwise alluding to negotiations or the failure to participate in negotiations regarding a possible compromise of their claims. See Fed. Rule Evid. 408; O.C.G.A. § 24-3-37. Fed. Rule Evid. 408 generally prohibits use of offers of settlement or conduct or statements made during negotiations except for very narrow circumstances which do not apply in this case. Id.  O.C.G.A. § 24-3-37 provides that admissions or propositions made with a view to a compromise are inadmissible. O.C.G.A. § 24-3-37.  Further, any testimony that may reveal admissions made with a view towards compromise would be "inherently harmful, for the jury would draw conclusions therefrom in spite of anything said by the parties  . . .[or] by the judge in instructing [the jury]." Newton Bro., Inc. v. Shank, 240 Ga. 471, 471, 241 S.E.2d 231, 232 (1978). Accordingly, any evidence regarding settlement negotiations or the absence of settlement negotiations should be prohibited.

A related argument that is sometimes made in opening statement or closing argument is an implication that a party has been unreasonable in settlement negotiations.  This improper argument is made with phrases like

"we have no alternative but trial" and suggesting that most cases settle, but in this case the Plaintiffs "have to try it".  These improper arguments inject settlement issues into the case and are as improper as settlement discussions themselves.

**16. Evidence or argument regarding the standard of care that encompasses hindsight.**

The Defendants anticipate that Plaintiffs may offer expert testimony at trial that includes opinions based on hindsight.  The Plaintiffs' counsel also may cross-examine the defense experts about the standard of care by asking them to consider information that was not known by Dr. Boaz at the time he cared for Mr. Shaw.  Any such inquiries by the Plaintiffs would improperly suggest that medical care may be judged in hindsight.  Expert testimony "must establish the parameters of the acceptable professional conduct and set forth how or in what way the defendant deviated therefrom," and an expert cannot use hindsight—particularly the patient's outcome—to do so. Loving v. Nash, 182 Ga. App. 253, 255, 355 S.E.2d 448, 450 (1987).

"An unintended result does not raise an inference of negligence." Oakes v. Magat, 263 Ga. App. 165, 167, 587 S.E.2d 150, 152 (2003) (citations and punctuation omitted).  Georgia law expressly provides that it is well recognized that "an after-the-fact assessment of facts or evidence

cannot be the basis of a negligence claim 'so long as the initial assessment was made in accordance with the reasonable standards of medical care." Smith v. Finch, 285 Ga. 709, 711, 681 S.E.2d 147, 149-50 (2009) (citations and punctuation omitted).   Accordingly, physicians may only be held accountable for the knowledge they reasonably could be expected to have at the time they rendered medical care; the concept of subsequently acquired knowledge is not appropriate for consideration in determining whether a physician fell below the standard of care.  Barnes v. Wall, 201 Ga. App. 228, 231, 411 S.E.2d 270, 273 (1991).

Similarly, section 1983 claims have analogous requirements of subjective knowledge. Farrow v. West, 320 F.3d 1235, 1243 (11th Cir. 2003) (deliberate indifference requires subjective knowledge of the serious harm). A defendant cannot be found liable for information that was not subjectively known to him. Id. Obviously information learned only in hindsight could not have been known to Dr. Boaz at the time he was providing care to Mr. Shaw, and such evidence therefore cannot form the basis of any opinion or argument critical of his conduct. Any information not know to Dr. Boaz at the time he provided treatment is irrelevant and thus inadmissible. Fed. R. Evid. 401, 403.

Specifically, the Plaintiffs may not offer evidence or argument that Dr. Boaz was negligent simply because Mr. Shaw later was diagnosed with a spinal cord lesion or even because Mr. Shaw's lesion may have been present at the time he came to see Dr. Boaz. Instead, Dr. Boaz's role in Mr. Shaw's care must be judged only by the information that he had at the time of the visit. If the Plaintiffs are instead able to allege negligence based only on Mr. Shaw's later diagnosis, their claim would amount to *res ipsa loquitur*, and as a "long-standing and well-recognized principle[,] the doctrine of res ipsa loquitur is not applicable in medical malpractice cases in Georgia." Critser v. McFadden, 277 Ga. 653, 656, 593 S.E.2d 330, 333 (2004).

For these reasons, this Court should prevent the Plaintiffs from attempting to establish the proper standard of medical care based on hindsight. Any opinions elicited from expert witnesses by the Plaintiffs based on facts not reasonably available to Dr. Boaz at the time he was involved in Mr. Shaw's care only seek to prejudice the Defendants and confuse the issues before the jury. Just as the Defendants cannot be held liable based on subsequently discovered information, including the unfortunate outcome, any expert opinions or argument based on such information are irrelevant and should be excluded.

**17. To use technology and preview certain records during opening statement.**

The Defendants request that this Court allow the parties to use technology, including the use of a PowerPoint and video screens during opening statement. The Defendants also request that this Court allow the parties to preview during opening statement certain materials that are stipulated as admissible, or are reasonably expected to be admitted into evidence. The Defendants also seek to present non-exhibit demonstrative aids that have been shown to opposing counsel prior to use. The Defendants believe such material will be a preview of the evidence for their case in chief, are not objectionable or argumentative, and will help the jury better understand the evidence to be presented.

**18. Evidence or argument that references Plaintiffs general good character or seeks Defense witnesses to vouch for Plaintiff's witnesses.**

The right to determine the credibility of witnesses belongs to the jury and, therefore, it is inappropriate to take an issue from the jury when the resolution of that issue requires the court to weight the credibility of witnesses. Hibiscus Assocs. v. Bd. Of Trustees of the Policemen and Firemen Retirement System of the City of Detroit, 50 F.3d 908, 919 (11th Cir. 1995). The Plaintiff may attempt to introduce testimony regarding their

general good character in order to bolster the credibility of the testimony. According to Fed. Rule Evid. 404, evidence of a person's character or a trait of character is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait. Id. As such, this Court should limit or restrict testimony from the Plaintiffs' witnesses stating that Plaintiffs have good character, or were "truthful", or that the Shaw's character is such that they are worthy of belief regarding what instructions they were told by Dr. Boaz for follow-up with Dr. Mortazavi and others.

The Defendants also ask this Court to prevent any question, reference, or suggestion as to whether any defense witnesses or experts believe that any of the Plaintiffs' witnesses are truthful or otherwise worthy of believe. This type of questioning is improper. See Fed. Rule Evid. 608, 611.

### 19. Evidence or argument regarding the emotional toll or damage Mr. Shaw's injuries have caused his family or friends, other than his wife.

Members of Mr. Shaw's family – other than Ms. Shaw's loss of consortium claim – or circle of friends may not recover for their own emotional distress or injuries resulting from her death.  It is a firmly established principle in Georgia law that recovery for mental suffering, grief, and the wounded feelings of relatives is not a compensable injury for which

a plaintiff may seek recovery. <u>Bell v. Sigal</u>, 129 Ga. App. 249, 250 (1973); <u>Young Men's Christian Assoc. v. Bailey</u>, 112 Ga. App. 684, 708 (1965). Furthermore, the Georgia Court of Appeals in <u>Young Men's Christian Assoc.</u> specified that the mental suffering, grief, and sorrow of the friends and family are not to be considered by the jury in their determination of whether to find for the plaintiff. <u>Id.</u> In support of its ruling, the Court cited <u>The Travelers Ins. Co. v. Sheppard</u>, 85 Ga. 751 (1890) stating that, "[t]he grief and sickness of plaintiff consequent upon hearing of her husband's death . . . are not relevant and therefore not admissible evidence in her behalf." <u>Young Men's Christian Assoc.</u>, 112 Ga. App. at 708. Accordingly, this Court should rule *in limine* that testimony from Mr. Shaw's friends and family members regarding their feelings or emotions about his injury is irrelevant, lacks probative value, and may not be received in evidence.

**20. References to medical literature without the proper foundation.**

The Plaintiffs may attempt to use medical literature either to support or bolster the opinions of the Plaintiffs' own experts, or to cross-examine the defense experts without laying a proper foundation. The Plaintiffs may also refer to medical literature during opening statement or closing argument. The use of such medical literature would only be appropriate during cross-

examination and only if a legally sufficient foundation has been established. The Plaintiffs' experts are therefore prohibited from seeking to bolster their opinions by citing medical literature on direct examination.

Fed. Rule Evid. 803(18) outlines the limited use of medical literature that is permissible at trial. It is clear from this statute that, if admitted, the statement may be read into evidence but not received as an exhibit. Id. Further, if the medical literature is to be used during cross-examination, appropriate foundation must be laid and the publication must be established "as a reliable authority by the expert's admission or testimony, by another expert's testimony, or by judicial notice". Id. at (B). In the absence of this foundation, and at any time on direct examination, medical literature is inadmissible as hearsay.

**21. Asking questions regarding or otherwise referring to generalized safety standards or other aspirations of safety in the community that have no relevance to the standard of care set forth by Georgia law, including during *voir dire*, during the questioning of both fact and expert witnesses and during opening and closing statements.**

Defendants hereby request that Plaintiffs' counsel be prohibited from asking inappropriate and improper hypothetical questions or otherwise referring to generalized safety standards or other aspirations of safety in the community that have no relevance to the standard of care set forth by well-

established Georgia case law, including during *voir dire*, during the questioning of both fact and expert witnesses, and during opening and closing statements.

Plaintiffs' counsel should be prohibited from engaging in questioning that seeks to manipulate prospective jurors into arriving at a fear-driven verdict for the Plaintiffs rather than basing their decision on the standard of care.  To that end, Plaintiffs' counsel should be prohibited from asking hypothetical questions relating to aspirational safety standards and general safety rules rather than the applicable standard of care. Plaintiffs should similarly be precluded from asking misleading questions to panic the prospective jury members with threats of fabricated "dangers" relating to hypothetical situations involving the safety of the community rather than focusing on the standard of care.

Similarly, allowing Plaintiffs' counsel to question lay and fact witnesses on general standards of safety law purposely evades the witness's role as a mere conduit of observations and lay opinions relating to the facts of this case.  It also confuses the line between lay and expert testimony in this matter.

As discussed in detail above, the Federal Rules permit exclusion of

evidence if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, or by considerations of undue delay or needless presentation of cumulative evidence. Fed Rule Evid. 403. Moreover, "'relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. Rule Evid. 401-403.

Here, Plaintiffs' counsel 's use of generalized standards of safety rather than the standard of care because such evidence will prejudice the Defendants and mislead the jury. Moreover, such safety standards are irrelevant to the standard of care under Georgia law. Under Georgia law, a physician has a duty to exercise the degree of care, skill, and diligence that an ordinarily careful practitioner in the same or similar circumstances in the community or a similar community would have exercised. Hartman v. Shallowford Cmty. Hosp., 219 Ga. App. 498, 501 (1995). In medical malpractice cases, expert testimony is required to establish the reasonable practice in the community, i.e. the standard of care. Cherokee County Hosp. Auth. v. Beaver, 179 Ga. App. 200, 201 (1986). The conduct of the Defendant is then adjudged against that standard, not against general safety

standards.  See, e.g., Bowling v. Foster, 254 Ga. App. 374, 377 (2002). The standard of care is set by members of the profession, not by Plaintiff's counsel through arbitrary references to issues of community safety.  See, e.g., West v. Breast Care Specialists, LLC, 290 Ga. App. 521, 523-524 (2008).

### 22. Presenting, discussing, arguing or otherwise exhibiting any testimony or evidence constituting statements of regret, apology, sympathy, mistake, or error allegedly made by any health care provider.

Defendants anticipate that Plaintiffs will attempt to reference statements made by Dr. Boaz to the Shaws regarding Mr. Shaw's injuries. Specifically, Plaintiffs Daniel Shaw and Kimberly Shaw recall a conversation with Dr. Boaz during which Dr. Boaz apologized for what happened to Mr. Shaw. [See Deposition of Daniel Shaw, pp. 92-95; Deposition of Kimberly Shaw, pp. 60-61.] Mr. Shaw testified that Dr. Boaz "apologized non-specifically about what happened to me". [Deposition of D. Shaw, p. 92:7-9.] Mr. Shaw cannot recall the specific verbiage, but testified that Dr. Boaz said, "I'm sorry" several times to him and his wife and said, "I'm sorry that, you know, that we missed it". [Id., p. 92-94.] Mrs. Shaw testified that she recalled Dr. Boaz said, "I'm sorry" and that the sense she got was that he was apologetic they did not catch the lesion sooner. [Dep. of

K. Shaw, p. 61:8-15.] Dr. Boaz recalls expressing remorse for Mr. Shaw's condition and the "whole situation that went on with him". [Deposition of David Boaz, M.D., p 117: 7-22.]

Such testimony is inadmissible as evidence under Georgia law and shall not constitute an admission. The statements made by Dr. Boaz fit precisely into the definition of inadmissible evidence under Georgia law.

O.C.G.A. § 24-4-416 provides in pertinent part that:

> In any claim or civil proceeding brought by or on behalf of a patient allegedly experiencing an unanticipated outcome of medical care, any and all statements, affirmations, gestures, activities, or conduct expressing regret, apology, sympathy, commiseration, condolence, compassion, mistake, error, or a general sense of benevolence which is made by a health care provider or an employee or agent of a health care provider to the patient, a relative of the patient, or a representative of the patient and which relates to the unanticipated outcome shall be inadmissible as evidence and shall not constitute an admission of liability or an admission against interest.

O.C.G.A. § 24-4-416(b).

The statute defines "health care provider" as "any person licensed under Chapter 9, 10A, 11, 11A, 26, 28, 30, 33, 34, 35, 39, or 44 of Title 43 or any hospital, nursing home, home health agency, institution, or medical facility licensed or defined under Chapter 7 of Title 31." O.C.G.A. § 24-4-416(a). This broad definition includes Dr. Boaz and the alleged statements

made by him during this conversation with the Shaws. Therefore, Defendants request that the Court grant this motion *in limine* on this issue and prohibit any reference to statements by medical providers that constitute "statements, affirmations, gestures, activities, or conduct expressing regret, apology, sympathy, commiseration, condolence, compassion, mistake, error, or a general sense of benevolence".

## II.    CONCLUSION

For the foregoing reasons, Defendants respectfully requests that the Court grant their motions *in limine* to exclude all of the categories of evidence discussed above.

This 6TH day of March, 2019.

HUFF, POWELL & BAILEY, LLC

*/s/ David D. Mackenzie*

_____
DANIEL J. HUFF
Ga. Bar No. 374860
DAVID D. MACKENZIE
Ga. Bar No. 796972

999 Peachtree Street           *Attorneys for Defendants David S.*
Suite 950                      *Boaz, M.D. and South Forsyth Family*
Atlanta, Georgia 30309         *Medicine and Pediatrics, LLC*
(404) 892-4022
(404) 892-4033 (Fax)

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| DANIEL SHAW and KIMBERLY SHAW, | ) ) ) | |
| Plaintiffs, | ) ) | CIVIL ACTION |
| v. | ) ) | FILE NO. 1:18-CV-02708-TCB |
| DAVID S. BOAZ, M.D. SOUTH FORSYTH FAMILY MEDICINE AND PEDIATRICS, LLC, ALI MORTAZAVI, D.O. and RESURGENS, P.C. | ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have on this day served true and correct copies of the foregoing DEFENDANTS DAVID BOAZ, M.D. AND SOUTH FORSYTH FAMILY MEDICINE AND PEDIATRICS, LLC'S OMNIBUS MOTIONS *IN LIMINE* AND BREIF IN SUPPORT upon all parties or their counsel of record by efiling and via U.S. Mail, First Class Postage pre-paid, to said parties or their counsel of record as follows:

James O. Wilson, Jr., Esq.
PO Box 667
Marietta, GA 30061

Darren Summerville, Esq.
Angela R. Fox, Esq.
Maxwell K. Thelen, Esq.
The Summerville Firm, LLC
1226 Ponce de Leon Ave., NE
Atlanta, GA 30306

Lawrence B. Schlachter, Esq.
Schlachter Law Firm
602 Macy Dr.
Roswell, GA 30076

Paul E. Weathington, Esq.
Jessica T. Holland, Esq.
Weathington Smith, PC
191 Peachtree St NE # 3900
Atlanta, GA 30303

This the 6th day of March, 2019.

HUFF, POWELL & BAILEY, LLC

*/s/ David D. Mackenzie*

_____
DANIEL J. HUFF
Ga. Bar No. 374860
DAVID D. MACKENZIE
Ga. Bar No. 796972

999 Peachtree Street
Suite 950
Atlanta, Georgia 30309
(404) 892-4022
(404) 892-4033 (Fax)

*Attorneys for Defendants David S.*
*Boaz, M.D. and South Forsyth Family*
*Medicine and Pediatrics, LLC*